ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAR -7 A II: 42
CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| GUILLAUME BASELET, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 311-097 |
| | ) | |
| HARLEY G. LAPPIN and WALT WELLS, | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner was an inmate incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia,[1] when he filed a petition under 28 U.S.C. § 2241 contesting the execution of his sentence of confinement. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that Mr. Lappin be **DISMISSED** from this case, as Warden Wells is the only proper Respondent. The Court further **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

I.  **BACKGROUND**

Respondent provides that Petitioner was convicted on August 7, 2006 in the United States District Court for the Southern District of Florida on one count of encouraging and

---

[1]Subsequent to the filing of this action, Petitioner was released from the custody of the Bureau of Prisons ("BOP") and was last in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") pursuant to an Immigration Detainer issued by the United States Department of Homeland Security concerning Petitioner's imminent deportation or removal from the United States . (Doc. no. 9, p. 5 & Exs. 10 & 11.)

inducing aliens to unlawfully enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). (Doc. no. 9, p. 4 & Ex. 3.) After serving a six-month sentence on that conviction, Petitioner was deported from the United States on or about March 7, 2007. (Doc. no. 9, p. 4 & Ex. 4, p. 2.) At some point after his deportation, Petitioner reentered the United States.

Petitioner was taken into administrative custody by an ICE deportation officer on June 11, 2008 on an immigration administrative warrant. (Doc. no. 1, p. 15.) He remained in ICE administrative custody from June 11, 2008 until August 15, 2008, when he was transferred to the custody of the United States Marshal's Service and placed under arrest pursuant to a criminal complaint for illegal reentry into the United States. (Id.); see also United States v. Guillaume,[2] MJ 208-3145-PS, doc. no. 1 (D.N.J. Aug. 15, 2008). On April 17, 2009, Petitioner was indicted for illegal reentry of a deported alien, in violation of 8 U.S.C. §§ 1326(a) & (b)(2). United States v. Guillaume, CR 209-294-DRD-1, doc. no. 1 (D.N.J. Apr. 17, 2009). He subsequently pleaded guilty to this offense and was sentenced to 46 months of confinement on July 19, 2010. (Doc. no. 9, p. 5 & Exs. 7 & 8.) Petitioner was also sentenced to three years of supervised release following his release from confinement. (Id. at 5 & Ex. 8.) Petitioner was awarded custody credit for the period between his arrest pursuant to the criminal complaint on August 15, 2008, through July 18, 2010, the day prior to his conviction on July 19, 2010. (Id. at 5 & Ex. 9, p. 2.)

Petitioner then filed the instant petition on October 17, 2011, arguing that he is entitled to "credit for time spent in the custody of 'Immigration'" from June 11, 2008 to August 15,

---

[2]The Court notes that although Petitioner's name is listed on his petition as "Guillaume Baselet," his name alternately appears as "Baselet Guillaume,""Guillaume Baselet," and "Baselet, Guillaume" throughout the exhibits attached to both his petition and to the response submitted by Respondent. (See generally doc. no. 1, pp. 10-22; doc. no. 9, Exs. 1-11.)

2008. (Doc. no. 1, pp. 2-3.) However, following the filing of his habeas petition, and two days before Respondent filed his response, Petitioner was transferred from BOP custody to ICE administrative custody pursuant to an Immigration Detainer ordering his imminent deportation. (Doc. no. 9, p. 5 & Exs. 10 & 11.) Respondent argues first that because Petitioner has been released from BOP custody since he filed the above-captioned petition, this renders the instant habeas petition moot. (Id. at 5-6.) Respondent concedes, however, that because Petitioner's sentence includes a three-year period of supervised release following his release from BOP custody, this may call into question whether his petition is moot. (Id. at 7 (citing Watkins v. Haynes, 445 F. App'x 181, 183 (11th Cir. 2011) (*per curiam*) (holding that a § 2241 petition is not rendered moot where a period of supervised release follows completion of sentence because district court retains jurisdiction to equitably reduce petitioner's term of supervised release)).) In the alternative, Respondent argues that Petitioner's argument fails on the merits because Petitioner is not entitled to jail time credit for the period in which he was held in administrative custody of ICE. (Id. at 8-11.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. Petitioner's Warden is the Proper Respondent

Petitioner originally named as Respondents Walt Wells, Warden at MCF, and Harley G. Lappin, Director of the BOP. In his response (doc. no. 9 p. 2), Respondent Wells points out that Mr. Lappin is not a proper respondent because in a habeas proceeding, the case or controversy is between the person in custody and his custodian. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."); Wacker v. Bisson, 348 F.2d 602, 605 (5th Cir.

3

1965).³ Thus, Walt Wells, Petitioner's custodian by virtue of his position as Warden at MCF, is the only proper Respondent. Accordingly, the Court **REPORTS** and **RECOMMENDS** that Mr. Lappin be **DISMISSED** from this case.

### B. Petitioner Fails to State a Valid Claim for Relief

As noted above, Petitioner was incarcerated at MCF when he commenced the above-captioned case, but he has since been released from BOP custody to the custody of ICE pursuant to an Immigration Detainer. (Doc. no. 9, p. 5 & Exs. 10 & 11.) Following his release from BOP custody, Petitioner faces 3 years of supervised release, the terms of which include a requirement that once he has been deported, he must obtain prior written approval from the United States Attorney General before reentering the United States. (Ex. 8, p. 3.)

Ordinarily, a petitioner's release subsequent to filing a habeas action renders the petition moot because the petition no longer presents a case or controversy, as required under Article III, § 2, of the Constitution, unless there is a showing of "collateral consequences." See Spencer v. Kemna, 523 U.S. 1, 7-8 (1998) (requiring showing of collateral consequences of parole revocation to maintain suit for wrongful termination of parole status after "reincarceration that [the petitioner] incurred as a result of that action" was "over and [could not] be undone"). However, as Respondent points out (doc. no. 9, p. 7), a period of supervised release satisfies the case-or-controversy requirement. See Watkins v. Haynes, 445 F. App'x 181, 183 (11th Cir. 2011) (*per curiam*) (finding that period of supervised release following term of imprisonment presents a collateral consequence of a petitioner's sentence because supervised release imposes restrictions on liberty and a court could equitably reduce the term

---

³In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

4

of supervised release); Dawson v. Scott, 50 F.3d 884, 886 n.2 (11th Cir. 1995) (same).

Moreover, "[i]n the context of aliens' petitions under 28 U.S.C. § 2241, deportation after the petition is filed does not render the case moot so long as some collateral consequences of the removal remain, such as the bar to reentry." United States v. Wilson, 240 F. App'x 139, 144 (7th Cir. 2007) (*per curiam*); see also Zegarra-Gomez v. INS, 314 F. 3d 1124, 1126 (9th Cir. 2003); Leitano v. Reno, 311 F.3d 453, 456 (1st Cir. 2002); Smith v. Ashcroft, 295 F.3d 425, 428-29 (4th Cir. 2002); Tapia Garcia v. INS, 237 F.3d 1216, 1218 (10th Cir. 2001); Chong v. INS, 264 F.3d 378, 385 (3d Cir. 2001). Here, as noted above, Petitioner's terms of supervised release provide, *inter alia*, that he is barred from reentering the United States without written permission of the United States Attorney General. (See Ex. 8, p. 3.) As this presents a collateral consequence of Petitioner's sentence, his petition is therefore not moot.

Nevertheless, Petitioner is not entitled to the relief he seeks. In particular, the issues Petitioner raises concerning the computation of his sentence are governed by 18 U.S.C. § 3585(b) and by Program Statement ("PS") 5880.28 of the Sentence Computation Manual (CCCA of 1984), which implements the congressional mandate of 18 U.S.C. § 3585(b).

18 U.S.C. § 3585 provides:

**(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

**(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

5

Petitioner's sentence computation is also governed by Program Statement ("PS") 5880.28 of the Sentence Computation Manual (CCCA of 1984), which implements the congressional mandate of 18 U.S.C. § 3585(b).[4] According to PS 5880.28:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS)[5] under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by <u>INS pending a civil deportation determination is not being held in "official detention" pending criminal charges.</u>

PS 5880.28, Page 1 – 15A, *available at* www.bop.gov/policy/progstat/5880_028.pdf (emphasis in original). This PS cites several cases for the proposition that a deportation determination is a civil matter that is not covered by the "official detention" language that covers criminal charges. See, e.g., Ramirez-Osorio v. INS, 745 F. 2d 937, 944 (5th Cir. 1984) ("A deportation proceeding is a civil, not criminal, action." (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1042-43 (1984)); Cabral-Avila v. INS, 589 F.2d 957, 959 (9th Cir. 1978) ("The deportation proceeding, despite the severe consequences, has consistently been classified as a civil, rather than a criminal matter."). Similarly, decisions of precedential value in this Circuit have ruled that deportation proceedings are civil rather than criminal in nature. United States v. Noel, 231 F.3d 833, 837 (11th Cir. 2000) (*per curiam*); Barthold v. United States INS, 517 F.2d 689, 691 (5th Cir. 1975); see also Reno v. Koray, 515 U.S. 50, 61 (1995) ("[C]redit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained

---

[4]Program Statements, the BOP's internal agency guidelines, are entitled to some deference from the courts. Reno v. Koray, 515 U.S. 50, 61 (1995).

[5]Pursuant to a 2003 reorganization of the Department of Homeland Security, the former INS was merged with elements of the United States Customs Service to create ICE.

6

in a 'penal or correctional facility,' § 3621(b), *and who were subject to BOP's control*."[6] (emphasis added)). Indeed, this Court reached the same conclusion in Fletcher v. Pugh, CV 303-082, doc. no. 8 (S.D. Ga. Apr. 16, 2004), *adopted as opinion of District Court*, doc. no. 11.

Here, between June 11, 2008 and August 15, 2008, Petitioner was being held in ICE administrative custody pending *civil* deportation proceedings. Petitioner argues, however, that his administrative custody with ICE is "related and connected" to his criminal prosecution for illegal reentry. (Doc. no. 1, pp. 3-4.) The Court does not agree. It is true that time spent in ICE administrative custody is not spent "pending a civil deportation determination" where the detention is a "mere ruse[] to detain a defendant for later criminal prosecution." Noel, 231 F.3d at 836 (citations omitted). Yet this exception "should only be applied when 'the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution.'" Id. (citing United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000)). Petitioner has offered no evidence to suggest that his ICE administrative custody was a ruse to detain him for criminal prosecution, much less that it was the primary or exclusive purpose of his detention. By contrast, as explained above, PS 5880.28 and applicable case law support Respondent's position that while Petitioner was in ICE administrative custody, he was only being held for disposition of civil proceedings that were not related to his eventual sentencing on the criminal charge of illegal reentry. As Petitioner was not held in "official detention" from June 11, 2008 to August 15, 2008, he is thus not entitled to the jail time credit he seeks.

---

[6]As should be plain, prisoners awaiting deportation by ICE are subject to the control of ICE, not the BOP.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Mr. Lappin be **DISMISSED** from this case, as Warden Wells is the only proper Respondent. The Court further **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 7th day of March, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE